BAKER v. NANCE et al. (No. 6193.)

(Court of Civil Appeals of Texas. San Antonio. April 23, 1919.)

1. CARRIERS ⊜228(5)—LIVE STOCK SHIPMENT—TIME FOR DELIVERY—EVIDENCE.

In action for damage to live stock from delay, where shipment did not reach destination until 45 hours after being loaded, held, that evidence overwhelmingly shows that more than 16 hours should have been allowed as time in which delivery should have been made.

2. APPEAL AND ERROR ⊜1171(5)—DISPOSITION — REVERSED AND REMANDED — DAMAGES.

Where court on appeal concludes that great preponderance of the evidence shows verdict to be excessive, but cannot determine to what extent it is excessive, court will reverse judgment and remand cause.

Appeal from Hays County Court; J. R. Wilhelm, Judge.

Suit by E. Nance and others against James A. Baker, receiver of the International & Great Northern Railway Company, and another. Judgment against named defendant, and he appeals. Reversed and remanded.

Fisher & Fisher, of Austin, and Robert Thompson, of Dallas, for appellant.
Will G. Barber, of San Marcos, for appellees.

MOURSUND, J. We adopt appellant's statement, as follows:

"Appellees instituted this suit against James A. Baker, as receiver of the International & Great Northern Railway Company, and against the Ft. Worth Belt Railway Company, to recover damages in the sum of one thousand dollars ($1,000.00) because of alleged injuries to two shipments of steers delivered to defendant at Ft. Worth, Tex., on July 14 and 31, 1916, respectively, for transportation to Kyle, Tex.; it being asserted that such injuries were occasioned by negligent delay and rough handling en route. Appellant answered by general demurrer and general denial, together with special pleas that appellees' cattle were accepted for shipment under a special contract whereby it was agreed between the parties thereto that appellees' live stock were not to be transported within any specified time, nor delivered at destination at any particular hour, nor in season for any particular market, whereby appellant rested under the duty of transporting same with reasonable dispatch only, which it is alleged was done in each instance. Defendant Ft. Worth Belt Railway Company answered by general demurrer and general denial, together with various special pleas unnecessary to detail. Appellees thereupon filed their supplemental petition, containing a general and special denial, to which appellant answered with his first supplemental answer, containing general demurrer and general denial. Trial before court and jury terminated on August 10, 1917, in a verdict against appellant for the sum of $500, apportioned $475 upon the first shipment and $25 upon the second, and in favor of the defendant Ft. Worth Belt Railway Company, in accordance with which verdict judgment was duly entered.

It is contended that the verdict is excessive in so far as it awards the sum of $475 as the damages suffered with respect to the four-car shipment. The only evidence as to the amount of the damages was that of appellee Hawkins, who testified that the cattle were damaged on an average of from $3.50 to $4 per head more than they would have been had they been handled in the usual and ordi-

nary manner and within the usual and ordinary time. At $3.50 per head, the damages would have amounted to $476. The jury allowed appellees $475. The cattle averaged 725 pounds when shipped, and Hawkins estimated that they suffered a shrinkage of 100 pounds per head, although the cattle were not fat, but merely strong stock intended to be put on grass and fattened for the market. The four-car shipment did not reach Kyle until about 45 hours after the cattle were loaded at the stockyards, North Ft. Worth. They were unloaded at Taylor and remained in the pens for seven hours. Hawkins' theory was that if proper diligence had been used in the transportation such unloading would have been unnecessary. In fact, he testified that 16 hours was the usual and ordinary time for transporting such a shipment, counting from the time it leaves the stockyards until it reaches Kyle. This estimate by him, in view of all of his testimony, must be taken as being the basis adopted by him for determining how much delay occurred for which appellant should be held responsible. If he made any allowance of more time than 16 hours, he failed to state such fact.

Upon a careful examination of the evidence, we conclude that the overwhelming preponderance thereof shows that 16 hours cannot be accepted as the time in which the shipment should have been transported. At the time the two shipments were made, appellant was only operating one through freight train a day between Ft. Worth and San Antonio, which was scheduled to leave Ft. Worth at 10 p. m. Appellees' shipments, being insufficient to call for a special live stock train, necessarily had to be carried in the regular freight train, and to be subjected to all the necessary delays incident to such trains.

In mentioning the trains, we will refer to the one containing the four cars as the "first train," and the one containing the one car shipment as the "second train." Hawkins did not accompany the shipments from the stockyards to the International & Great Northern yards, but did accompany both from Ft. Worth to Kyle. He testified that except for the slow run on the four-car lot between Valley Junction and Taylor he did not have much fault to find as to the running time between stations; that the principal delay he was complaining of occurred at Ft. Worth and the various terminals or division points, and when the first shipment was unloaded at Taylor; that he considered the run to Mart of the first train a very fair run. While the run between Valley Junction and Taylor, complained of by him, took 5 hours and 35 minutes, it appears that it stopped at Gause for 20 minutes, at Rockdale for 45 minutes, at Thrall for 15 minutes, and at Milano to add one car. The second train made the run in 3 hours and 40 minutes, but stopped only at Milano to add one car, which took 20 minutes. If these runs are compared with respect to the difficulties necessarily incident to each, it is seen that there is hardly any difference in the actual running time. There is no evidence that the stops were not for the purpose claimed by appellant's witness, or that they were unreasonably long. Excluding all time lost en route at terminals or division points and before the train left Ft. Worth, the time consumed by the train of July 31st, was 19 hours and 5 minutes, and all the evidence indicates that a fair run was made on that occasion. If the run between Valley Junction and Taylor is entirely excluded, the train of July 14th took 15 hours and 5 minutes to make the run from Ft. Worth to Kyle. If time be allowed for the run from Valley Junction to Taylor, in proportion to that taken for the other runs, or 3 hours and 40 minutes, the time consumed by the other train, and also the time necessarily consumed in transporting the cattle from the stockyards to the International & Great Northern Railway Company's yards, it appears again that there must be error in the estimate of 16 hours as the usual and ordinary time.

[1] The time ordinarily used for the purpose of getting the cattle to the International & Great Northern yards appears unnecessarily long; but, in view of the explanations concerning the magnitude of the business of the belt line, and the necessity for requiring each railway company to fix a certain time for receiving its shipments, it does not appear that there was negligence in this respect. The evidence shows conclusively that a three-hour stop at Mart is customary and reasonably necessary for switching and for re-icing the fresh meat which was always carried on this train. The stops at Valley Junction and Taylor are not satisfactorily accounted for by necessary operations; but the fact that these are division points, and train crews are changed and switching done, means that some delay is required at each place. In view of the matters mentioned, and of Hawkins' concession concerning the run to Mart, and as to where the principal delays occurred, it appears to us that his estimate of 16 hours for transporting cattle from the stockyards to Kyle cannot be correct as a basis for the time which should have been made by the train of July 14th, and in fact is bound to be erroneous as applied to any other train than a special stock train. One of appellant's witnesses testified that the schedule time of the train in question was a little less than 27 hours, but that the usual and ordinary time was from 24 to 27 hours. When the difficulties encountered by the two trains which transported appellees' cattle are compared, it is easily seen that there might be a difference of 3 hours, and yet be no negligence with respect to making the run. We conclude that the evidence overwhelmingly

shows that 16 hours cannot be accepted as the time in which the cattle should have reached Kyle.

Hawkins, in order to make his estimate of the damages, necessarily had to first decide how much delay there was, before he could estimate how much damage was suffered by reason thereof. His sweeping opinion as to the amount of damages suffered furnishes no guide to the jury in assessing damages, if any one of the elements entering into it is disproved, unless in connection therewith he explains to what extent his opinion is based on the various elements. His opinion as to damages is not based on the time the evidence may show to be the reasonable time for making the run, but is based on the estimate, made by him, that 16 hours is the usual and ordinary time. That time must be held to have been taken by him as his basis, for, if he does not know the time required, he is not competent to express the opinion which in this case furnishes the only guide given the jury to assess damages. The element of delay was recognized by him as an important one, and was evidently so regarded by the jury. If the witness shows himself qualified to express an opinion as to the extent of the delay, but under the facts of the particular case it must be held that such opinion is wrong, his answer to the sweeping final question, as to amount of the damages, becomes worthless, because no one can tell to what extent he based his opinion as to the loss suffered upon his estimate of the extent of the delay which should have been avoided.

[2] If the jury should find that Hawkins was mistaken as to the 16 hours, and decide that his estimate was erroneous to the extent of 8 hours or 12 hours, as applied to the facts of this case, they could not tell to what extent he based his opinion as to the damages incurred upon his belief that there was 8 or 12 hours more delay than was found by the jury to have taken place. Any estimate by the jury under such circumstances would be a mere guess. A jury will naturally infer that a man will not underestimate his damages. If he says he is damaged from $3.50 to $4 per head, it is not probable that they will allow him more than $3.50 per head. In this case they allowed the $3.50 with the exception that $1 was deducted, which made the amount $475. This indicates that they accepted as true Hawkins' estimate as to the delay. We conclude that the great preponderance of the evidence shows the verdict to be excessive, and that it is impossible to determine to what extent it is excessive, and that therefore the judgment must be reversed and the cause remanded.

There is no merit in any of the other assignments of error.

Judgment reversed, and cause remanded.